**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DJAMSHED UMAROV, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | **CIVIL NO.  22-4163** |
| | : | |
| COMMISSIONER DANIELLE | : | |
| OUTLAW, *et al.,* | : | |
| *Defendants.* | : | |

**MEMORANDUM**

**Scott, J.**                                                                          **September 30, 2024**

Plaintiff Djamshed Umarov ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 and Pennsylvania state law against Defendants the City of Philadelphia, the Philadelphia Police Department ("PPD"), Former Police Commissioner Danielle Outlaw, Detective Thomas Anderosky, John/Jane Doe PPD Employee, and the Philadelphia District Attorney's Office ("DAO"), District Attorney Larry Krasner, and John/Jane Doe DAO Employee (collectively, "DAO Defendants"), after being arrested and charged twice for a retail theft that occurred on the same date and at the same location. Currently pending before this Court are Defendant Commissioner Danielle Outlaw's Motion to Dismiss (ECF No. 3), DAO Defendants' Motion to Dismiss (ECF No. 4), and Defendant the City of Philadelphia's Motion to Dismiss (ECF No. 19). The Court will grant these Motions as described below. An appropriate Order will follow.

## I.    FACTUAL BACKGROUND[1]

On February 27, 2018, Plaintiff was arrested and charged with Retail Theft for stealing $298 in merchandise from the Home Depot located at 11725 Bustleton Avenue, in Philadelphia,

---

[1]      The following facts are taken from the Complaint and are accepted as true in deciding the Motions to Dismiss. The Court also has considered the Criminal Complaint attached to the DAO Defendants' Motion to Dismiss (ECF No. 4, Ex. A), which is referred to in the Complaint and is central to the claims. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("Documents that the defendant attaches

Pennsylvania (Case I). ECF No. 1, Ex. C, Compl. ¶ 16. On March 13, 2018, Plaintiff appeared in Philadelphia Municipal Court and entered a Summary Diversion Program. *Id.* ¶ 17. On June 23, 2018, Plaintiff completed the program and paid the fine as required, which resulted in Case I being dismissed and later expunged. *Id.* ¶¶ 18–19.

Despite the foregoing, on June 20, 2018, based upon a sworn affidavit by Defendant Detective Thomas Anderosky, an arrest warrant was issued for Plaintiff for charges of Theft by Unlawful Taking, Theft by Deception, and Receiving Stolen Property, in the amount of $238.97 stemming from conduct that occurred at the same Home Depot also on February 27, 2018. *Id.* ¶ 22, ECF No. 4, Ex. A. In January 2020, after Plaintiff was pulled over in New Jersey and police discovered the active warrant, Plaintiff was arrested and detained for days as he awaited extradition to Pennsylvania. Compl. ¶¶ 24–25.

On February 19, 2020, the DAO initiated a second case ("Case II") against Plaintiff for the charges indicated in the warrant. *Id.* ¶ 25. In December 2020, after the DAO provided Plaintiff pretrial discovery, Plaintiff filed a motion to dismiss his charges on the basis that the charges were precluded under double jeopardy. *Id.* ¶¶ 26–29. Three status hearings took place after Plaintiff filed his motion to dismiss prior to a motion hearing being held on November 21, 2021. *Id.* ¶¶ 31–33. At the motion hearing, the court agreed that Case I and Case II were identical in date, time, place, facts, and witnesses, and accordingly, granted Plaintiff's motion to dismiss on November 22, 2021 finding that the second prosecution was precluded by double jeopardy. *Id.* ¶¶ 34–35.

---

to the motion to dismiss [that] are referred to in the plaintiff's complaint and central to the claim . . . may be considered by the court." (emphasis and citations omitted)).

II.   **PROCEDURAL HISTORY**

On August 26, 2022, Plaintiff filed his Complaint in the Philadelphia County Court of Common Pleas claiming that he was unlawfully arrested and maliciously prosecuted as a result of Defendants' pattern, practice, and custom of subjecting citizens like Plaintiff to "unreasonable force, arrest and prosecution in the absence of probable cause, not conducting a proper investigation, not reacting properly and timely to information from citizens such as Plaintiff and his representatives." *Id.* ¶ 38. Specifically, Plaintiff brings the following counts: (Count I) Federal Civil Rights Violations under 42 U.S.C. § 1983 against all Defendants; (Count II) Assault and Battery against the City, the PPD, Danielle Outlaw, Thomas Andorosky, and PPD Jane/John Doe Employees; (Count III) False Arrest, False Imprisonment, and Abuse of Process against all Defendants; (Count IV) Invasion of Privacy – Casting in a False Light against all Defendants; (Count V) Intentional Infliction of Emotional Distress against all Defendants; (Count VI) Civil Conspiracy against all Defendants; and (Count VII) Violations of Civil Rights under the Pennsylvania Constitution against all Defendants. *See generally* Compl.

On October 18, 2022, Defendant Outlaw removed this case to federal court. ECF No. 1. Thereafter, on October 24 and October 25, 2022, Defendant Outlaw and the DAO Defendants filed Motions to Dismiss. ECF Nos. 3–4. Plaintiff filed oppositions to the Motions (ECF Nos. 10–11) and the DAO Defendants filed a Reply in Support of their Motion (ECF No. 12). On February 24, 2023, the case was reassigned to this jurist. ECF No. 13. Subsequently, on March 7, 2023, Defendant the City of Philadelphia filed a Motion to Dismiss (ECF No. 19), to which Plaintiff filed an opposition on March 17, 2023. ECF No. 21. On April 25, 2024, Defendant Detective Thomas Anderosky filed an Answer to the Complaint. ECF No. 26. Accordingly, the outstanding Motions are ripe and ready for disposition.

3

III.   **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

IV.   **DISCUSSION**

This Discussion Section will proceed as follows. First, the Court will discuss the claims against the PPD. Second, the Court will discuss the DAO Defendants' immunity. Third, the Court will discuss the official capacity claims. Fourth, the Court will discuss the municipal liability claim. Fifth, the Court will discuss the supervisory liability claim against Defendant Outlaw. And sixth, the Court will discuss the state law claims against the City and Defendant Outlaw.

## A. The PPD will be Dismissed as an Improper Party[2]

Plaintiff brings all of the counts in his Complaint against the PPD. However, the PPD "may not be sued as though it were a legal entity separate from the City." *City of Philadelphia v. Glim*, 613 A.2d 613, 616 (Pa. Commw. Ct. 1992); *see also Martin v. Red Lion Police Dep't*, 146 F. App'x 558, 562 n. 3 (3d Cir. 2005) (explaining a municipal police department, without an identity separate from the municipality of which it is a part, is not a proper defendant in a § 1983 action); *Jones v. Fed. Police*, No. 24-CV-1092, 2024 WL 3540983, at *4 (E.D. Pa. July 25, 2024) (collecting cases dismissing agencies of the municipality). Consequently, the Court will dismiss all claims against the PPD with prejudice.

## B. The DAO Defendants are Shielded from Plaintiff's Federal Claim by Absolute Immunity

Plaintiff brings his § 1983 claim against all Defendants. The DAO Defendants argue that they are entitled to absolute prosecutorial immunity from suit because they were acting within the scope of their authority when prosecuting Plaintiff. *See generally* ECF No. 4. In response, Plaintiff asserts that dismissal is "premature" and that he should be given the opportunity to conduct discovery. *See generally* ECF No. 10. For the reasons set forth below, this Court agrees that the DAO Defendants' actions are shielded by absolute immunity.

To earn the protections of absolute immunity at the motion to dismiss stage, "a defendant must show that the conduct triggering absolute immunity 'clearly appear[s] on the face of the complaint.'" *Fogle v. Sokol*, 957 F.3d 148, 160–61 (3d Cir. 2020) (citation omitted). In analyzing whether a prosecutor's actions are protected by absolute immunity, "courts must 'focus upon the functional nature of the activities rather than [the prosecutor's] status' to determine whether

_____

[2] The Court notes, that in responding to the City's Motion to Dismiss, Plaintiff failed to respond to the argument that PPD is not a proper defendant.

absolute immunity is warranted." *Id.* at 159 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). The Third Circuit has explained that there "two basic steps" in conducting this analysis, though the steps "tend to overlap." *Schneyder v. Smith*, 653 F.3d 313, 333 (3d Cir. 2011). "The court must ascertain just what conduct forms the basis for the plaintiff's cause of action, and it must then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.* (citing *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008)). This "functional test separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'" *Fogle*, 957 F.3d at 159–60 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

Analytically, Plaintiff's claims against the DAO Defendants can be divided into allegations that: (1) the DAO Defendants filed Case II without proper investigation; and (2) the DAO Defendants failed to promptly dismiss Case II after Plaintiff filed a motion to dismiss arguing that Case II was precluded by double jeopardy. *See generally* Compl. ¶¶ 16–35.

As to the first claim—that the DAO Defendants filed Case II without properly investigating—such activity is a quintessential prosecutorial function entitled to absolute immunity. "The decision to initiate a prosecution is at the core of a prosecutor's judicial role." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463–64 (3d Cir. 1992) (citing *Imbler*, 424 U.S. at 430–31). In fact, "[a] prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred." *Id.* at 1464 (citations omitted); *see also Weimer v. Cnty. of Fayette, Pennsylvania*, 972 F.3d 177, 189 (3d Cir. 2020) (holding prosecutor entitled to absolute immunity for alleged conduct in deciding to file and approving criminal complaint). Thus, "[a] prosecutor's alleged failure to properly investigate

6

before initiating a prosecution is . . . conduct within the scope of absolute immunity." *Schrob v. Catterson*, 948 F.2d 1402, 1411 (3d Cir. 1991) (citations omitted).

Plaintiff has not alleged any details which would place the DAO Defendants' actions in initiating Case II outside of the scope of absolute immunity. For instance, Plaintiff has not alleged any pre-filing actions which could constitute administrative or investigative functions not entitled to absolute immunity, such as "directing [police] evidence gathering, or giving probable cause advice [to the police]." *Pownall v. Krasner*, No. 23-2049, 2024 WL 4164621, at *4 (3d Cir. Sept. 12, 2024) (internal quotation marks and citations omitted). Plaintiff's invocation of the catch word "investigate," "cannot suffice in this case to forestall dismissal on immunity grounds." *Rose v. Bartle*, 871 F.2d 331, 345, 347 n.12 (3d Cir. 1989) (citation omitted) (affirming absolute immunity from allegation of instituting grand jury proceedings without investigation and without good faith belief that any wrongdoing occurred). Accordingly, the DAO Defendants' initiation of Case II is protected by absolute immunity.

Plaintiff's second claim—concerning the DAO Defendants' attendance at numerous status hearings and their failure to promptly dismiss Case II following Plaintiff's motion to dismiss— also falls within the scope of activities protected by absolute immunity. Such conduct constitutes prosecutorial litigation decisions, which are "intimately associated with the judicial phase of the criminal process . . . and require[d] legal knowledge and the exercise of related discretion." *Pownall v. Krasner*, 675 F. Supp. 3d. 517, 525 (E.D. Pa. 2023) (internal quotations and citations omitted), *aff'd*, No. 23-2049, 2024 WL 4164621 (3d Cir. Sept. 12, 2024). Because the DAO Defendants were acting as "officer[s] of the court" when taking the above actions, those actions are protected by absolute immunity. *Imbler*, 424 U.S. at 431 n.33 (holding that "the prosecutor is

immune from a civil suit for damages under" Section 1983 when "initiating a prosecution and in presenting the State's case").

Plaintiff's argument that dismissal on absolute immunity is "premature" and that he is entitled to discovery on the issue, does not save his claim. As previously noted, where the conduct triggering absolute immunity clearly appears on the face of the complaint, courts will grant motions to dismiss based on prosecutorial immunity. *Fogle*, 957 F.3d at 161 (citations omitted); *see also, e.g.*, *Pownall*, 675 F. Supp. 3d. at 524 (granting motion to dismiss claims against DA Defendants finding they are protected by absolute immunity). Plaintiff has not presented this Court with any allegations, which if proven, would change this Court's absolute immunity analysis.

Moreover, because the Court finds that the DAO Defendants are absolutely immune for their judicial advocacy in initiating and pursuing Case II, it follows that absolute prosecutorial immunity extends to District Attorney Krasner's supervision and training of the prosecutors on matters related to that advocacy. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 344–49 (2009) (holding that, while absolute immunity typically does not extend to purely administrative tasks, it does apply when the administrative task—such as supervision or training—is directly connected with a prosecution). Count I will therefore be dismissed with prejudice to the extent it seeks to hold the DAO Defendants liable for their judicial advocacy in initiating and pursuing Case II against Plaintiff, or it involves the training and supervision of the assistant district attorneys related to that prosecution.

### C.      The DAO Defendants are Shielded from Plaintiff's State Law Claims

Plaintiff also seeks to assert claims based on the Pennsylvania Constitution and state tort law claims against the DAO Defendants. Neither may proceed. First, there is no private right of action for damages stemming from alleged violations of the Pennsylvania Constitution. *Plouffe v.*

*Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution."); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

Second, in Pennsylvania, common law tort immunity protects district attorneys and assistant district attorneys from suit when acting in the scope of their official duties or authority. *Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001); *see also Pownall*, 675 F. Supp. 3d at 528 (dismissing state law claim because DA Defendants are absolutely immune under state law). Here, any possible claims against the DAO Defendants stem from their decision to prosecute Plaintiff in Case II, conduct which is clearly within the scope of their official duties. Accordingly, Plaintiff's state law claims (Counts III–VI) against the DAO Defendants will be dismissed with prejudice.

**D.    Plaintiff's Official Capacity Claims will be Dismissed**

Plaintiff's Complaint indicates that he is bringing his claims against the individual Defendants in both their individual and official capacities. *See generally* Compl. However, the official capacity claims are indistinguishable from the claims against the municipality at issue, here, the City of Philadelphia. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166 (citation omitted). Therefore, to the extent the named individual Defendants are sued in their official capacities, any such claims are duplicative of the claims against the City of Philadelphia and such claims will be dismissed. *See, e.g., Miller v. Cnty. of*

9

*Chester*, No. 23-3992, 2024 WL 219397, at \*7 (E.D. Pa. Jan. 19, 2024) (dismissing official capacity claims against employees of county as duplicative of the claims against the county itself); *Chamberlain v. City of Philadelphia*, No. 20-6572, 2023 WL 2868010, at \*7 (E.D. Pa. Apr. 10, 2023) (dismissing official capacity claims against city officials as duplicative of claims against City itself).

### E.     Plaintiff has Not Plausibly Alleged Municipal Liability

In Count I of Plaintiff's Complaint, Plaintiff asserts federal claims against the municipality. A municipality can be held liable for the unconstitutional acts of its employees only if a plaintiff pleads and proves a *Monell* claim, which requires showing that the municipality's policy or custom caused the violation of federal rights. *See Monell*, 436 U.S. at 694. The Third Circuit recognizes two pathways for a *Monell* claim: a plaintiff may either show that (1) "an unconstitutional policy or custom of the municipality led to [their] injuries," or (2) the injuries "were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotations and citations omitted).

Here, Plaintiff claims that the City, the PPD, Defendant Outlaw, the DAO, and Defendant Krasner "had encouraged, tolerated, ratified and has been deliberately indifferent to [certain] patterns, practices and customs and to the need of more or different training, supervision or discipline[.]" Compl. ¶¶ 43–53. Thus, Plaintiff appears to be asserting claims under both theories. However, no matter the theory, Plaintiff's claims fail to state a claim.

To state a claim under the first theory of municipal liability, a plaintiff must identify a policy or custom that caused the alleged constitutional harm. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or

10

edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom, on the other hand, may be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citations omitted); *see also* <u>*Wright v. City of Philadelphia*</u>, 685 F. App'x 142, 147 (3d Cir. 2017) ("Custom stems from policymakers' acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." (internal quotations and citation omitted)).

Here, Plaintiff has not identified any official policy or custom that caused him harm. Although Plaintiff purports to identify "pattern, practices and customs," all the allegations are failure or inadequacy allegations, not policy or custom allegations. *Forrest*, 930 F.3d at 105–06. Moreover, Plaintiff pleads no facts to show acquiescence or deliberate indifference from high-level City officials. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). For instance, he has not shown a widespread practice within the PPD of failing to investigate whether a criminal defendant may have been arrested for the same crime twice. Additionally, he has not shown a pattern of similar violations, such that decisionmakers can be said to have been deliberately indifferent to known risks. *See Wood v. Williams*, 568 F. App'x 100, 105–06 (3d Cir. 2014). In fact, the Court has not been presented with even one other instance of similar conduct. Even if Plaintiff had identified an unconstitutional practice so widespread to have the force of law, merely utilizing the conclusory terminology "encouraged, tolerated, ratified, and has been deliberately indifferent," *see* Compl. ¶ 45, cannot establish that a Police Department decisionmaker knew of and acquiesced to that practice. Thus, Plaintiff cannot proceed on an unlawful custom theory.

11

A claim under the second theory of municipal liability can take several forms, including failure to train, failure to supervise, and failure to discipline. *Forrest*, 930 F.3d at 105–06. To sufficiently plead that the municipality's failure to train, supervise, or discipline its employees amounted to deliberate indifference, a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty*, 660 F.3d 169, 179–180 (3d Cir. 2011) (internal quotations and citations omitted) (applying standard to failure-to-train claim); *see also Forrest*, 930 F.3d at 106 (applying same standard to any type of "failure to" claim).

Here, Plaintiff identifies purported failures or inadequacies that he claims contributed to his harm, including, *inter alia*, the failure to follow established policies regarding the conducting of criminal investigations, the failure to properly communicate with other law enforcement, the failure to maintain proper records, the failure to take proper remedial actions against employees who had previously caused violations of civil rights, and the failure to timely react to communications regarding wrongful arrests and prosecution. Compl. ¶¶ 45–48. But Plaintiff does not support any of these allegations with any facts showing even one other similar incident, let alone a "pattern" of similar incidents. *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). The purported failures or inadequacies identified here are pled with such a high level of generality that almost any error in any particular case could be subsumed under those failures or inadequacies. Therefore, Plaintiff's claims under a failure or inadequacy theory fail.

Overall, Plaintiff's Complaint simply paraphrases the elements of a *Monell* claim, and thus, "fails to satisfy the 'rigorous standards of culpability and causation' required to state a claim for

municipal liability." *Wood*, 568 F. App'x at 104 (quoting *McTernan*, 564 F.3d at 658–59). Accordingly, Plaintiff's municipal liability claims will be dismissed.

      **F.**      **Plaintiff fails to State a Supervisory Claim Against Defendant Outlaw**

Plaintiff's § 1983 claim also seeks to impose supervisory liability on Defendant Outlaw. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, "supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (internal quotations and citation omitted). Second, supervisors may be held liable "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted). Importantly, however, "[i]n a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims." *Vargas v. McCauley*, No. 24-cv-0765, 2024 WL 2925965, at *3 (E.D. Pa. June 10, 2024) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Here, because Plaintiff's Complaint fails to establish municipal liability and is devoid of any allegations that Defendant Outlaw was personally involved in his case or even had knowledge of his case, Plaintiff has failed to state a supervisory liability claim against Defendant Outlaw.

      **G.**      **Plaintiff's State Law Claims Against Defendant Outlaw and the City of Philadelphia will be Dismissed**

Plaintiff also asserts state tort law and Pennsylvania constitutional claims against Defendant Outlaw and the City of Philadelphia. Neither category of claims sufficiently states a

claim for relief. First, as previously mentioned, there is no private right of action for damages stemming from alleged violations of the Pennsylvania Constitution. *See supra* Section IV.C. Second, the state tort claims are not plausibly alleged; rather, the claims amount to "[t]hreadbare recitals of the elements of the cause[s] of action, supported by mere conclusory statements" which are insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Accordingly, the Court will dismiss Counts II through VII as to Defendant Outlaw and the City of Philadelphia.

## V.     **CONCLUSION**

For the foregoing reasons, the Motions to Dismiss (ECF Nos. 3, 4, 19) will be granted as follows. The claims against the PPD will be dismissed with prejudice. The claims against the DAO Defendants, including the Pennsylvania Constitution and state tort law claims, will be dismissed with prejudice based on prosecutorial immunity. Plaintiff's claims against Defendant Outlaw and the City of Philadelphia will be dismissed without prejudice. All counts against the individual officers remain. An appropriate Order will follow.

**BY THE COURT:**

**HON. KAI N. SCOTT**
**United States District Court Judge**

14